# CIRCUIT COURT OF BALTIMORE CITY.

Decided December 27, 1897.

## ALBERT W. REED
## VS.
## WILLIAM E. BAITZELL.

*Hinkley & Morris* for plaintiff.

*Thomas A. Whelan* and *Gans & Haman* for defendant.

STOCKBRIDGE, J.—

In a case pending between Albert W. Reed and William E. Baitzell, the proceedings had advanced to the stage of the taking of testimony before an examiner. The defendant in the case had been placed upon the stand at the call of the plaintiff, to testify with regard to certain alleged irregularities and apparently false entries and additions appearing in the books of a firm, in which the parties to this suit had been partners, and which books had been kept by the defendant. At the completion of the direct examination, and as preparatory to the cross-examination of the witness then on the stand, the defendant in the case, a request was made for the production of certain additional books of the firm, which additional books were supposed to contain the original entries of a number of the items with regard to which the witness had been examined in chief, and the tender was made by the counsel of the plaintiff, in the plaintiff's presence, and after a consultation between the plaintiff and his counsel, of all the books of the firm for this purpose. The tender so made was followed by a specification upon the part of the counsel for the defendant of the books desired by him for examination, and for the purpose of cross-examining the witness. Upon the day following this occurrence, the books, or a large number of them so proffered and called for, were by the plaintiff taken to the office of his counsel, agreeably to the tender of the previous day, and then within

twenty-four hours hereafter the said books were by the plaintiff removed without the consent or knowledge of his counsel, or any one connected with the cause, and destroyed by fire.

Three days later, the books not being produced, the defendant, through his counsel, applied to the Court for a peremptory order to require the production of the said books, and upon this petition an order was passed granting the prayer of the petitioner. This last mentioned order bears date the 14th day of December, 1897. On December 16th the plaintiff, by his counsel, come into Court by way of answer and petition, setting out that his original counsel had retired from the case; that new counsel had just been employed, and asking an extension of time, either to produce the said books or to show cause why they should not be produced upon the date limited for such extension. A brief extension was granted, but on the day following, December 17th, the plaintiff, by his counsel, presented a supplemental answer, in which the destruction of the books is set out, together with a statement that a considerable number of the books had been produced and filed with the Examiner (but the books so delivered to the Examiner were for the most part books other than the ones called for by the defendant); thereupon, and on the same day, testimony was taken for the purpose of eliciting the facts as in the nature of a contempt, and a petition (incorporating all of said testimony by reference) for an attachment for contempt was filed on the 22nd day of December. The plaintiff has demurred to this petition and the demurrer has been argued upon the petition and proceedings in the cause.

The assigned grounds of contempt are three in number.

1st. The act of the destruction of the books, in the manner in which it was done.

2nd. The answer of December 16th, upon the ground that it was false and misleading; and—

3rd. The supplemental answer of December 17th, upon the ground that the failure of the plaintiff to produce the books having resulted from his own wrongful act, that act could not by him

718

be pleaded by way of defense for non-compliance with the order for their production.

In support of the application for attachment, it has been strenuously urged that the power of the Court to deal with a contempt, is not limited by the precise wording of the statute (Art. 26, Sec. 4, P. G. L.), but that the Circuit Court of Baltimore City, being a Court created by the Constitution of the State of Maryland, and its powers therein defined as "the exercise or using threats or persuasion to influence the evidence of a witness, or even a person likely to be a witness, Shaw vs. Shaw, 2 S. & T., 517; or any conduct or interference in any proceedings by which others are deprived of their rights.

Ex parte Hayward, 45 L. T. 326.

McGregor vs. Barrett, 6 C. B. 262.

And were there no statute in this State today upon the subject of contempt, an act so flagrant, so subversive of the due and orderly progress of litigation as that now under consideration, is one which the Court would have no hesitation in treating as a contempt, and dealing with in the most severe manner by both fine and imprisonment. But as far back as 1853 the Legislature of this State saw fit to define what of exclusive equity jurisdiction within the limits of said city," it is not within the power of the legislature by any statute to abridge in any manner what might have been a contempt under the common law. From the earliest times the power has been recognized as inherent in Courts of justice, independent of any statutory enactment whatever, to preserve their own dignity, and to give force and effect to their decrees and orders, by treating as contempt any act in violation of, or disobedience of an order, or obstruction of the administration of justice, and under this general power which is now, and for centuries has been exercised by the English Courts, a wide variety of matters have been treated and punished as a contempt. Among these may be mentioned obstructing a person engaged in proceedings as a party or witness from attending a Court.

Galibaldo vs. Canoni, 6 Mod. 90, or preventing a witness being subpoened.

Clements vs. Williams, 2 Scott 814, should be deemed and taken as a contempt of Court, which act has been embodied in the present Code. This act was in force at the time of the adoption of the present Constitution of this State, and was a general regulation applicable to all Courts of this State, and must be presumed to have been known to, and been in the minds of the framers of the Constitution of 1867, when the powers of the Circuit Court of Baltimore City were defined, and that Court was declared to have "all such jurisdiction as the present Circuit Court of Baltimore City has." The statute is in terms undoubtedly a limitation upon the powers of the Court to take as a contempt some matters which it would have been possible to deal with as a contempt under the common law, but the power to so limit the Court by the Legislature has been recognized, and was in a case of contempt in Galland vs. Galland, 44 Cal. 476. In dealing with this case, therefore, the test which must be applied, is our own statute for contempt.

With respect to the several grounds assigned as constituting contempt, it is but proper that they should be considered seriatim.

1st. As to the destruction of the books. It is to be observed that the books of account destroyed by Mr. Reed were not at the time of their destruction Court papers. They had not been filed in the case, nor had they even been filed with the Examiner. Had they been, the right to treat the act of destruction as a contempt would have been clear, and disagreeable though the duty might have been, the Court would not have hesitated to deal with the matter as summarily as the act itself merited. The proceedings before the Examiner, and the testimony of Mr. Whitelock, establish beyond all question that the production of the books at the office of Mr. Whitelock was in pursuance of an agreement, although the word agreement does not appear upon the stenographer's notes of the sitting of the Examiner; but it does appear that what occurred there was read over a number of times and agreed to by both the counsel of the parties to the case, and the parties themselves, and with this fact established, no refuge can be taken

by reason of the fact that the word agreement does not itself appear in the Examiner's minutes. That the plaintiff wantonly and unjustifiably violated this agreement of himself and his counsel in his behalf, in a most flagrant manner, is equally clear, but a violation of agreement is not and can not, under such a statute as that in force in this State, be deemed contempt. In a number of States the powers of the Court are much broader than in Maryland; thus in New York, Michigan and some other States, "any misconduct of a party by which any right or remedy of a party to a civil action pending in the Court may be defeated, impaired, impeded or prejudiced," is a contempt, and were such the law in Maryland, the power of the Court would be ample to deal with a case like the present, which is neither more or less than the wilful destruction by a party to a cause of documentary evidence, which he knows is or may be of importance in doing justice between the parties, and which evidence he himself has tendered. But the terms of our statute are, unfortunately, not broad enough to make it possible by this proceeding either to reach the spiriting away of evidence, living or documentary. At the time when the books were destroyed there was no order, decree, writ, process or command of the Court for the production of the books. Nor do the circumstances warrant an inclusion of the act of the plaintiff under the expression of "misbehavior so near to the presence of the Court as to obstruct the administration of justice." That the effect of his act was to so obstruct it, there can be no question. But the first five lines of Sec. 4 have manifest relation to an entirely different class of offenses, so manifestly, that even to meet the exigencies of a case like the present there is no justification for perverting that plain intent by the Court.

2nd. With regard to the answer of December 16th, it is alleged that the plaintiff was guilty of perjury, that the answer was misleading and intended to mislead the Court into the granting of an extension of time, and that such answer therefore constitutes an act of contempt. That the answer was not entirely candid and frank, that it did not disclose the situation as it existed on that day, that it might and probably did mislead the Court, is undoubtedly true. Nevertheless if perjury was committed when the affidavit was made to that answer, that is a matter for the cognizance of another tribunal, and cannot be construed as a contempt under the Maryland Statute, and reprehensible though the lack of frankness and candor in that answer may be, meriting the severest condemnation, I can find no precedent under a statute as narrow as ours which will warrant me in construing that element as of itself a contempt.

3rd. With regard to the supplemental answer of December 17th, suffice it to say, that the only classes of cases under a statute similar to ours, where Courts have held the failure to comply with an order of Court a contempt, where it was manifestly impossible that such compliance should be had, even though caused by the wrongful act of the party himself, have been limited to cases where the proceeding was one with regard to alimony pendente lite, and this class of cases by reason of their nature stand necessarily so much apart from all other cases that it would not be safe as a precedent to import the rule which obtains in those into a case like the one at bar. I can not, therefore, regard the third alleged ground of contempt as one properly coming within our statute.

In sustaining the demurrer, however, the Court feels not only that it is justified, but that it would be derelict in duty, if it did not, and in the strongest language, condemn the act of the plaintiff. It is to be regretted that so wanton and unjustifiable a destruction of important and material papers, so heinous a suppression of evidence can not under our statute be reached by this Court. But upon the Court, no less than the individual, rests the obligation of obedience to law, and even for the punishment of an outrage of so violent a character there could be no excuse for judicial usurpation of authority.

Believing, however, that the power is vested in this Court in such cases to make such rule with regard to the costs as it shall deem proper, in sustaining the demurrer, I shall direct the costs of this immediate proceeding to be paid by Albert W. Reed, the plaintiff in this case.